WILLIAM LOESCHIGK, OTTO WESSENDONCK, GUSTAVUS KUTTER and EDWARD LUCKENMEYER, Appellants, *v.* CHARLES BRIDGE and WINSLOW M. BURDICK, Respondents.

The mere fact of a sale by a person in failing circumstances, upon credit, to one who has knowledge of his circumstances, does not establish fraud.

The relations of the parties to each other, the price agreed to be paid, the · credit given, and other circumstances, are to be considered in determining the question of fraud; but the finding by the justice at Special Term, that such sale was for a good and valuable consideration, and without any intent to hinder, delay or defraud creditors, having been affirmed at the General Term, is conclusive.

(Argued March 30, 1870; decided June 22, 1870.)

APPEAL from a judgment entered upon the decision of the General Term of the Supreme Court in the first judicial district, affirming the judgment dismissing the complaint, with costs, rendered on trial before Mr. Justice LEONARD without a jury.

The appellants, having recovered judgment against the respondent Bridge, July 13, 1861, for $3,501.39, upon which execution was returned unsatisfied, brought this action to set aside a sale made by Bridge to Burdick, and certain judgments recovered against Bridge by Burdick, as fraudulent.

On the trial the justice found as follows: " That the plaintiffs duly recovered against the defendant Bridge the judgment mentioned in the complaint, at the time therein mentioned, and execution thereon was issued and returned unsatisfied, as mentioned in the complaint, and that the indebtedness on which said judgment was rendered accrued in September, 1860.

That on the 24th April, 1861, the defendant Bridge sold his entire stock of goods to the defendant Burdick for the sum of $24,072; that on this sale, Burdick paid $1,000 in cash, and gave his notes for $23,072, payable at an average of sixteen months from date; that at the same time Bridge sold to Burdick bills receivable and accounts for the sum of $30,000 or $35,000, and received the notes of Burdick, payable at twenty-four months and at an average of sixteen months; that at the time of the sale Bridge was unable to pay his debts as they matured, and Burdick was aware of the fact; that Burdick was at the time in the employ of Bridge as his book-keeper; that on the 17th and 24th June, 1861, two judgments, as mentioned in the pleadings and proofs, one by confession and one by offer, were entered in this court in favor of Burdick against Bridge, and execution returned unsatisfied on the 29th June, 1861, and a receiver, under proceedings supplementary to said executions, was appointed; that the plaintiffs commenced their suit for the debt in question on the 22d June, 1861, and that judgments were docketed in the office of the clerk of the county of New York, against the said Bridge, on the 10th, 15th, 16th and 27th May, 1861, and 1st June, 1861, respectively.

And, as conclusions of law upon the facts, I find that the sale of goods and bills receivable mentioned in the pleadings was not made to hinder, delay or defraud creditors; was made in good faith, and is valid; that there was no fraud in the sale or transfer of the goods, debts, bills or accounts receivable by Bridge to Burdick; that the defendant Burdick was a man of property adequate to an honest purchase, on credit, of the stock, debts and bills receivable, and that said Burdick has fully met his obligations to pay for said stock; that the inducement to purchase by said Burdick was: to secure himself for his liabilities for said Bridge, and said sale and purchase was fair and honest, and for value received by said Bridge. (To this part of the decision the plaintiffs excepted.) That the two judgments in favor of Burdick against Bridge, mentioned in the pleadings, are not fraudu-

lent, but valid. (To this decision the plaintiffs excepted.) That the complaint in this action be dismissed with costs as to the defendant Burdick, and as to the defendant Bridge without costs." (To this decision the plaintiffs excepted.)

The plaintiffs appealed from the judgment entered upon this decision to the General Term, where it was affirmed, and the plaintiffs appeal to this court.

The facts are more particularly stated in the opinion of SUTHERLAND, J., dissenting.

*William Watson*, for the appellants, urged that the findings were not conclusive, citing *Dunning* v. *Waterman* (17 N. Y., 21); *Claflin* v. *Farmers & Citizens' Bank* (25 id., 293); *Wilds* v. *Hudson R. R. Co.* (24 id., 433); and that the transactions, from their very nature, hindered, delayed and defrauded creditors, citing *Webb* v. *Daggett* (2 Barb. 9); *Filder* v. *Day* (2 Sandf. S. C., 594); *Litchfield* v. *Pelton* (6 Barb., 189); *Vance* v. *Phillips* (6 Hill, 433); *Cooke* v. *Smith* (3 Sandf. Ch., 333); 8 Johns., 446; 2 Cowper, 434; 7 B. Monroe, 448; 2 Bailey, 324; 1 Hill S. C., 380; 4 Vt., 405.

*Samuel E. Lyon*, for the respondent, insisted that there was no evidence from which this sale or the judgments could be declared fraudulent, and cited *Lewis* v. *Palmer* (Hill & D. Supp., 68); *Henry* v. *Henry* (8 Barb., 588); 1 Bosw., 81; 5 Barb., 291; *Seymour* v. *Wilson* (4 Kern., 567); 18 Wend., 353, 365; 8 Johns., 446; 14 id., 439; 2 Johns. Ch., 35; 18 Johns., 515; 21 N. Y., 23; *Rose* v. *Bridge* (15 Abb., 150).

LOTT, J. The findings of fact by the judge at Special Term, having been affirmed on appeal by the General Term, are conclusive on this court. They show that the sale by the defendant, Bridge, of his stock of goods, bills receivable and accounts, to his co-defendant, Burdick, was made for a good and valuable consideration, and without any intent to hinder, delay or defraud the creditors of Bridge.

The referee, it is true, also finds that at the time of the

sale Bridge was unable to pay his debts as they matured, and that Burdick, who was his book-keeper, was aware of this fact. Those facts do not *per se* show fraud.

Burdick, although occupying the position of book-keeper, is stated to have been a man of property adequate to an honest purchase on credit of the property sold, and that he had in fact, at the time of the trial, fully met his obligation to pay for the stock in trade, and there is nothing found to show that the price agreed to be paid was inadequate. The relations of the parties to each other, the price agreed to be paid, the credit given, and other circumstances of a suspicious character, were proper to be considered by the judge in determining the question of actual fraud, and his decision on the question cannot be reviewed by us.

The mere fact of a sale by a party, even in failing circumstances, of his property to a purchaser having a knowledge thereof, does not show fraud. It may, on the contrary, in many cases, be evidence of good faith and an honest desire to appropriate his means to the discharge of his debts. Such would be a fair inference resulting from the transaction, if the price agreed to be paid is the fair and full value thereof, and there were no other circumstances tending to impeach it.

There is nothing shown in the present case to warrant the court in holding the sale void. The judgment should be affirmed with costs.

SUTHERLAND, J. (dissenting.) This action was brought by the plaintiffs as judgment creditors of the defendant, Bridge, with an execution returned *nulla bona*, to set aside certain transfers of property by the defendant, Bridge, to the defendant, Burdick, and certain judgments suffered and confessed by Bridge in favor of Burdick.

For some years previous to the sale transactions on or about the 24th of April, between the two defendants, hereafter specified, Bridge had been, and then was, a merchant, dealing in hats, caps, millinery and straw goods and Yankee notions, at 359 Broadway, in the city of New York, and for more than

a year previously Burdick had been Bridge's clerk or book-keeper in the Yankee notion department.

On the 24th of April, 1861, Bridge sold out to Burdick his entire stock of goods, store furniture and fixtures for $24,072, receiving from him $1,000 in cash, and for the balance, $23,072, taking Burdick's notes in various sums, or for various amounts, some as small as $300, and others as large as $2,000 or $3,000, payable, at an average, sixteen months from their date, the said 24th of April. At or about the same time, Bridge sold and transferred to Burdick bills receivable and accounts, of the nominal amount in the aggregate of something over $52,000, for Burdick's notes, in the aggregate amounting to $32,625.20, payable at an average sixteen months after date.

On the 24th of June, 1861, Burdick, by the service of a summons and complaint, commenced an action in the Supreme Court against Bridge, in which Burdick claimed to recover the aggregate amount alleged to be due and payable for principal and interest on certain promissory notes of Bridge, payable to one Waterman, and which Burdick alleged had before then been indorsed and transferred to him.

On the day of such service, Bridge appeared in person in the action, and offered in writing to permit judgment to be taken against him therein, for the sum of $6,813.60, the aggregate amount claimed to be due and payable on the notes, and for the costs and disbursments of the action, which offer was accepted, and judgment on the same day entered.

Burdick had previously, on or about the 17th of June, 1861, obtained a judgment in the Supreme Court, by or on the confession of Bridge, against him, for $10,624.68.

By the statement of confession, it would appear that $5,767.35 of this judgment by confession were due and owing to Burdick as a balance for moneys loaned by him to Bridge in various sums from time to time, beginning January 17th, 1861, and ending May 31st, 1861, and interest thereon; and it would further appear by the statement that on the 25th of April, 1861, Bridge paid Burdick $1,000, and on the same

day sold and delivered to him goods to the amount of or for $1,036 on account of the moneys so loaned by Burdick to Bridge.

It further appears from the statement for the judgment by confession that $2,528.24 of that judgment was the amount of a note of Bridge, dated 8th of January, 1861, payable at the Park Bank six months after date, which had been indorsed and delivered by Bridge to Burdick, and that this note was given for the balance due for moneys loaned in 1860 by Burdick to a firm of Bridge, McNulty & Co., of which said defendant, Bridge, was a member, and for services rendered by Burdick for said firm in 1860, and interest on such moneys and services, allowing for the rebate of interest on such note.

It would further appear by said statement that the remainder of the judgment by confession, to wit, $2,380.47, was the aggregate amount, allowing for rebate of interest, of two notes of Burdick, given by him in satisfaction of certain debts of Bridge, and the amount of which Bridge, when these notes were given, undertook to pay to Burdick on demand, less the rebate of interest to the maturity of the notes (one of these notes dated April 27th, 1861, and payable two months after date, having been given to one Heinik, and the other dated June 12th, 1861, payable five months after date, having been given to the Market Bank of Troy), and of five other notes of Burdick, one dated November 22d, 1860, at eight months, for $616.08 ; one dated April 23d, 1861, at eighteen months, for fifty dollars ; one dated May 23d, 1861, at twelve months, for $337.57 ; one dated May 8th, 1861, at sixteen months, for $374.45, and another, dated May 21st, 1861, at six months, for $315.02, given for an indebtedness of Bridge to one Joseph M. Orvis.

Executions having been issued and returned unsatisfied on these judgments so suffered and confessed by Bridge in favor of Burdick, and proceedings supplementary to such executions having been instituted, a receiver in or under such proceedings was appointed on the 29th of June, 1861, to whom by

order of the court, on the 16th of July, 1861, Bridge assigned all his remaining property of every name and nature.

This action to set aside the formal sale transfers, by Bridge to Burdick, on and about the 24th of April, 1861, and the judgments so entered in favor of Burdick on the offer and confession of Bridge, was commenced in October, 1861, and the action in which the plaintiffs' judgment of $3,501.39, mentioned in the complaint, was recovered, was commenced June 22d, 1861, and that judgment was recovered for a debt of Bridge's to the plaintiffs, for goods sold and delivered by the plaintiffs to Bridge, in September, 1860.

There does not appear to be any dispute about any of the facts of this case, so far as they are presented by the record.

The learned justice who tried this action at Special Term. after finding the sale, or pretended sale transactions between the two defendants, of the 24th of April, substantially as above stated, finds that at the time, " Bridge was unable to pay his debts as they matured, and that Burdick was aware of the fact; that Burdick was at the time in the employ of Bridge, as his bookkeeper," &c.   I think it may be said, that it is conceded in the answers of both defendants, that these sale, or pretended sale transactions took place, and that Burdick obtained his judgments against Bridge, in view of the fact that Bridge was a debtor in a failing condition, and was then, and probably would be, unable to pay his debts and liabilities as they fell due.

Burdick says, in his answer, that Bridge became embarrassed and unable to meet all his liabilities, and that he (Burdick) became aware that Bridge was largely indebted, " over and above every available means that he had, and in particular, that he owed about $90,000 of debts, which were confidential, beside a bank debt of about $40,000, for which the banks held about $70,000 of collaterals."   He then says, that with a friendly feeling, he lent Bridge sundry sums of moneys, and obtained discounts for him to enable him to meet his pressing liabilities, until he concluded that he (Bridge) must inevitably fail to pay all his debts as they

became due, and that he then called upon Bridge for a settlement; and that Bridge told him that he had not the ready money, either to settle with him (Burdick), or to pay off his (Bridge's) confidential, or other indebtedness, and then proposed to sell to him his entire stock, &c.

It appears from Burdick's answer and from his evidence on the trial, that the price agreed upon for nearly the whole of the stock of goods bought by Burdick, and for which he gave his notes, as before stated, was sixty-five per cent of the invoice price, and that he bought and gave his notes, as before stated, for the accounts and bills receivable, nominally amounting to something over $52,000, at a discount varying from twenty-five to thirty-five per cent.

It is stated in one or both of the answers, and the evidence of Burdick tends to show, that some of the creditors of Bridge were consulted before the sale transactions of the 24th of April, between the defendants, took place, and that the notes of Burdick, or some of them, given for the stock of goods and accounts and bills receivable, had been handed over or transferred to some of Bridge's creditors; and the defendants offered to prove on the trial that Burdick had paid such of the notes as had become due; but this evidence was objected to by the plaintiffs' counsel and excluded by the court.

It further appears from the evidence that several judgments were obtained against Bridge, in May and June, 1861.

Burdick testified that the receiver had paid him $1,350 on his judgments, or one of them, and that he did not know that the receiver had any other moneys in his hands, and he further testified that he was worth, or had a capital of, about $20,000 when he bought the stock of goods, &c., of Bridge.

It also appears that on and after the sale transactions of the 24th of April, Burdick took possession of the store and stock of goods, putting his own name, followed by the word "successor," over Bridge's, so that the sign on the store read "Winslow M. Burdick, successor to Charles Bridge."

The question is, can the transactions between the defend-

ants of the 24th of April, by which Bridge undertook to sell and transfer to Burdick his entire stock of goods, store furniture and fixtures, constituting all of his leviable property, so far as we can discover from the case, and over $50,000 of the cream of his accounts and bills receivable, for the promissory notes of Burdick payable at long dates, averaging sixteen months, be upheld and pronounced valid as to the plaintiffs and other creditors of Bridge?

I think they cannot. I think we should hold these trans·actions to have been and to be void as to the plaintiffs and other creditors of Bridge. And to show the grounds of this opinion, I can only repeat the substance of what I said in my dissenting opinion in *Scheitlin* v. *Stone* (43 Barb., 638).

The statute declares void every conveyance, &c., "made with the intent to hinder, delay *or* defraud creditors," &c.

The necessary result of the transactions, as avowed in the answers, was to hinder and delay the plaintiffs and other creditors. The parties must be presumed to have intended the necessary effect or result of their own acts. Creditors cannot be compelled to take notes for their debts. It cannot be said that a debtor in failing circumstances has a right to turn all his property into the notes of a third party, at long dates, and parcel these notes out among favored creditors, and compel even such favored creditors to take notes, or get nothing.

An insolvent debtor cannot deprive his creditors of the right to have his property converted into money without delay. He can make an assignment with preferences, but he cannot authorize his assignee to sell on credit. (*Nicholson* v. *Leavitt*, 6 N. Y., 510; *Barney* v. *Griffin*, 2 id., 365.)

In my opinion, on the conceded facts of this case, the sales, or pretended sale transfers to Burdick, for his notes (except $1,000 cash, which or the like sum would appear from the statement for the judgment of confession to have been paid back the next day), cannot be upheld without sanctioning an evasion of the act of 1860, regulating assignments for the benefit of creditors, and disregarding the provision of the

Revised Statutes as to fraudulent conveyances, &c., above quoted.

In *Downing* v. *Kelly, sheriff,* &c. (49 Barb., 547), it was held, by the General Term of the first district, that a failing debtor has no right to interpose a legal title between his property and his debts, to compel his creditors to take notes drawn on time, in payment of those debts.

In that case, the debtor had sold his stock of goods to his son and a clerk, taking their notes, payable respectively at different times, from three months to three years from date, with the view of placing his property in such a situation that his creditors could not take it under legal process, and to compel such creditors to take those notes in payment of their debts, and it was held, that this transaction was a legal hindering and delaying of creditors, which made the transfer, in judgment of law, void.

It is certainly singular, that the learned justice who tried the principal action at Special Term, and the learned justice who wrote the opinion on it at General Term, are reported as having concurred in the decision in *Downing* v. *Kelly, sheriff,* &c.

The finding in the principal case at special term, as *conclusions of law,* "that the sale of goods and bills receivable, mentioned in the pleadings, was not made to hinder, delay or defraud creditors; was made in good faith and was valid; that there was no fraud in the sale or transfer of the goods, debts, bills or accounts receivable, by Bridge to Burdick," &c., so far as the learned justice by it found or intended to find, as a conclusion of law or of fact, that the sale transfers by Bridge to Burdick were not made to hinder or delay creditors, must be viewed as utterly inconsistent with the facts previously found by the learned justice and with the conceded circumstances of the sale transactions, and with the purpose or motive of the transactions as avowed in both answers, and testified to by Burdick on the trial; and so far as the learned justice found or intended to find, as a conclusion of law or fact, that such sale transactions were made in good faith and

without any intent to defraud creditors, the finding must be regarded in substance and effect as a finding that a debtor in a failing condition may turn all his property into the notes of a third party on time, and thus put his property beyond the reach of his creditors and compel them to take such notes or nothing, in good faith and with an honest intent.

The statute makes void all conveyances, transfers, &c., " made with the intent to hinder, delay, *or* (not *and*) defraud," &c. The finding of the learned justice at Special Term, as to the good faith and honest intentions of the sale transactions, is really immaterial. It is of no consequence whether the defendants did, or did not, think that the interest of the creditors would be served or promoted by the transactions.

They intended to do what they did do, and what they did necessarily hindered and delayed creditors; and therefore they intended to hinder and delay creditors; and therefore, by the words of the statute, the sale, or pretended sale transactions, were void. In *Dunham* v. *Waterman* (17 N. Y., 21), SELDEN, J., following the reasoning of NELSON, J., in *Cunningham* v. *Freeborn* (11 Wend., 251 to 254), says: " That whenever an assignment contains provisions which are calculated, *per se*, to hinder, delay, or defraud creditors, although the fraud may be passed upon as a question of fact, it nevertheless becomes the duty of the court to set aside the finding, if in opposition to the plain inference to be drawn from the face of the instrument. *A party must, in all cases,* be held to have intended that which is the necessary consequence of his acts."

The learned justice, at Special Term, also found (apparently as a conclusion of law), that the two judgments obtained by Burdick against Bridge, one by confession and the other by offer, were not fraudulent, but valid.

All that I intend to say on this point is, that, considering the conceded circumstances of the sale transactions of the 24th of April, and the situation of the parties, and the evidence furnished by the records of the judgments themselves, as to the alleged purposes or considerations for which they

were suffered and taken, I do not think this finding can be sustained or justified on the case before us.

On the case made by the pleadings and evidence, I cannot resist the conclusion, that probably the suffering and taking of these judgments was a part of one scheme, of which the sale transfers were another part, to hinder and delay the plaintiffs and other creditors of Bridge, and to deprive them of their rights as creditors, if not to defraud them, by placing the whole of Bridge's property in the hands of Burdick, under color of the sale transfer titles, and of legal proceedings.

I think the judgment of the General Term, affirming the judgment of the Special Term, should be reversed and a new trial ordered, with costs to abide the event.

All concur with LOTT, J., except SUTHERLAND, J.

Judgment affirmed.

NOTE.—As to the question, to what extent findings of fact are conclusive, on appeal to this court, see also *Putnam* v. *Hubbel, ante,* 106.—REP.