WILLIAM RUHL, Respondent, *v.* CATHARINE A. PHILLIPS, Executrix, etc., et al., Appellants.

The sale of the entire effects of an insolvent copartnership upon credit, at a fair valuation, to a responsible vendee having knowledge of the insolvency, is not *per se* fraudulent. Although made by the vendor with intent to hinder, delay and defraud creditors, that does not affect the title of the purchaser, unless he had previous notice of the fraudulent intent.

(Argued May 19, 1871; decided September term, 1871.)

THIS is an appeal by the defendants, Phillips and Many, from an order of the General Term of the New York Common Pleas reversing a judgment in their favor, entered on the report of a referee, and ordering a new trial.

The action was brought by the plaintiff as a judgment creditor of the defendants Many & Lewis, partners in the jewelry business, after the return of an execution on his

judgment unsatisfied, for the purpose of setting aside a bill of sale to John B. Phillips (who was the original defendant) of all their property, on the ground that it was made by all the parties thereto with intent to hinder, delay and defraud the plaintiff and other creditors of the said Many & Lewis in the collection of their lawful demands against them.

The defendants Phillips and Many answered the complaint, controverting the allegations of fraud and claiming that the said sale was made in good faith, and for a good and adequate consideration paid therefor.

The defendant Lewis did not appear in the action. The issues joined therein were referred to Lewis B. Woodruff, Esq., as sole referee to hear and determine the same. He subsequently made his report in favor of the defendants. The judgment entered thereon was, on appeal to the General Term, reversed and a new trial ordered. In the judgment of reversal, it is " adjudged that the sale and transfer to the defendant, John B. Phillips, referred to in the pleadings, was, in fact, made with the intent to hinder, delay and defraud the creditors of the firm of Many & Lewis, and upon that question, among others, the aforesaid judgment of the General Term is reversed." The facts, so far as they affect the decision in this court, appear in the following opinion:

*Marsh & Wallis* for appellants. The finding of the referee, that the sale was not made with intent to hinder, delay or defraud creditors, is fully sustained by the evidence and the law. (*Hanford* v. *Artcher*, 4 Hill., 39; *Boskins* v. *Shannon*, 3 Coms., 310; *Purchase* v. *Mattison*, 3 Bos., 310; *Cunningham* v. *Freeborn*, 11 Wend., 241, 250.) The intent of the parties is what constitutes the fraud. (*Seymour* v. *Wilson*, 4 Kern., 567; *Waterbury* v. *Sturtevant*, 18 Wend., 353, 365.) The fact that P. knew of the insolvency of M. & L. is not evidence of fraudulent intent on his part. (*Waterbury* v. *Sturtevant*, 18 Wend., 353, 365; *Beals* v. *Guernsey*, Johns., 348, 352; *Rigney* v. *Talmadge*, 17 How., 556; *Mabbett* v.

*White*, 2 Kern., 456.) A debtor by assignment may secure an existing indebtedness, though not yet matured. (*Cunningham* v. *Freeborn*, 11 Wend., 241, 250.) An insolvent firm may transfer all the partnership property to a creditor or creditors to pay their demands, though they thus gain a preference over the other creditors. (*Egbert* v. *Wood*, 3 Paige, 517; *Mabbett* v. *White*, 2 Kern., 442.) In cases of this nature the question of fraudulent intent is a question of fact, and not of law. (3 R. S., 5th ed., 225, § 4; *Woodin* v. *Foster*, 16 Barb., 146; *Brooks* v. *Christopher*, 5 Duer, 216, 219; *Stuart* v. *Taylor*, 7 How., 251, 253; *Durkee* v. *Mott*, 8 Barb., 423, 425.)

*John J. Townsend* for respondent. An assignment for the benefit of creditors, authorizing a sale of the property on credit or an assignment by an insolvent firm, directing the effects of the firm to be applied in payment of an individual debt of a partner, is in violation of the statute, and furnishes conclusive proof of a fraudulent intent. (*Nicholson* v. *Leavitt*, 6 N. Y., 510; *Barney* v. *Griffin*, 2 N. Y., 365; *Kellogg* v. *Slauson*, 11 N. Y., 302; *Wilson* v. *Robertson*, 21 N. Y., 589; *Meacham* v. *Sternes*, 9 Paige, 405; *Browning* v. *Hart*, 6 Bar., 93; *Litchfield* v. *Pelton*, 6 Bar., 187; *Mills* v. *Carnly*, 1 Bos., 159; *Kepner* v. *Burkhard*, 5 Barr., Pa. R., 478; *Vance* v. *Phillips*, 6 Hill, 433; *Loeschick* v. *Baldwin*, 38 N. Y., 326; *Putnam* v. *Hubbell*, 42 N. Y., 106.) The attempt by an insolvent to avoid the obligation of immediate payment, or extend the period of credit, is fraudulent in law. (*Nicholson* v. *Leavitt*, 2 Seld., 510; *Dunham* v. *Waterman*, 17 N. Y., 17.)

LOTT, Ch. C. The facts in this case did not warrant the reversal by the General Term of the judgment entered on the report of the referee. It is a general rule that the verdict of a jury and the findings of a referee on questions of fact should not be set aside, if there is any testimony to sustain them, unless they are clearly against the weight of evidence.

It is conceded, in the opinion of the presiding judge at the General Term, that the special facts found by the referee were correctly found, and he stated that their correctness was not disputed by either party; but he came to the conclusion that they were "not competent in law to establish or warrant the finding that there was an absence of any fraudulent intent, but that, in his judgment, they established directly the contrary, for two reasons," which he states as follows: "1st. The sale was of the entire effects of an insolvent copartnership, upon a credit of from four to twenty-four months, the necessary effect of which was to postpone the payment of the creditors until the expiration of the term of credit, as well as to make the ultimate discharge of the copartnership debts dependent upon the pecuniary ability of the purchaser to pay the notes given by him as they respectively fell due, and was thus an act to hinder and delay creditors; and, 2d. Because there was an understanding between the parties, cotemporaneously with the sale, that the purchaser was to pay individual debts of one of the copartners, to secure him in doing which, $5,000 of the notes received upon the copartnership effects were handed back to him, to be appropriated by him in part in this way."

The first of those reasons was involved in the decision by the Court of Appeals of the case of *Loeschigk* v. *Bridge* (42 N. Y. Rep., 421), and it was there held that the mere fact of a sale, by a party in failing circumstances, of his property, to a purchaser having a knowledge thereof, to an amount more than double of that sold in this case for his notes, payable at at an average credit for sixteen months for the whole of the purchase-money, except $1,000 paid in cash, does not *per se* establish fraud, or a fraudulent intent to hinder, delay or defraud the creditors of the vendor.

The second reason is based on an error of fact. The understanding between the parties therein mentioned was not made cotemporaneously with the sale, which took place on the 21st day of May, 1861, whereas the said understanding was, as found by the referee, made on or subsequent to the twenty-second day of that month.

That finding is sustained by the testimony, and is conformable to the thirty-third item in the request of the plaintiff's counsel to find certain facts which he claimed to have been proved, and it is assumed to be correct by him in his points on this appeal.

The individual debts of one of the copartners, provided for by that understanding, amounted to $214, and the notes for $5,000, that were given back to Phillips for the purpose of securing him, were not only for that debt, but for several firm debts which he agreed to pay, and also as security for his indorsement of certain notes of the firm for upward of $1,500, which he had indorsed for their accommodation.

The conclusion of the learned judge that the transaction was fraudulent, for the two reasons above stated, was based on and resulted from his application of the principles of law applicable to assignments in trust for the benefit of creditors prohibiting sales of the assigned property on credit, and the appropriation of partnership effects to the payment of individual debt of one of the partners, to the prejudice and loss of creditors of the firm. He said: "It can make no difference whether the sale of the whole of the effects of an insolvent copartnership upon credit, or the application of partnership effects to the payment of the individual debt of a partner, is accomplished by the creation of a trust, or by a direct sale to a purchaser, as in this instance. The effect in both cases is the same, to hinder and delay creditors, and what would be fraudulent in one form is equally so in the other." A material distinction between the two cases is overlooked. In the first case the transfer is voluntary and without consideration. Its effect is, moreover, to divest the assignor of all legal interest in and control over the proceeds of the assigned property, and the assignee, although vested with the legal title thereto, holds it subject to the trusts declared in the assignment, and no creditors, except those provided for therein, can claim any benefit therefrom, and their rights are fixed and regulated by the terms of the trust, and if they prescribe a sale on credit, the collection by the creditor of his claim is necessarily postponed

until the expiration of the credit allowed. In the case of a sale, there is a consideration passing to the vendor from the purchaser, who becomes the owner in his own right of the property, and the vendor, while parting with the property, obtains the purchase-money therefor. This, whether paid in cash or in notes, is his property, and although it cannot in either case be reached by an execution, it is nevertheless liable to the claims of creditors and can be reached by an appropriate action, or by the more summary proceedings supplementary to execution now authorized by the provisions of the Code.

If the avails are in notes or other securities, they can, under the order of the court, be converted into money, and be made immediately available in satisfaction of the debt sought to be collected.

There is, also, this material consideration, which has been overlooked as applicable to a sale. Although it may have been made on the part of the vendor with the intent to hinder, delay or defraud his creditors, yet that fact does not in any manner affect or impair the title of a purchaser for a valuable consideration unless it appears that such purchaser had a previous notice of the fraudulent intention of his vendor or of the fraud rendering his title void.

The facts found by the referee show, among other things, that the transaction in question was an absolute sale, without any trust express or implied, or any agreement at or previous to the sale as to the disposition of the proceeds, except so far as to provide that the debts due to or agreed to be paid by Phillips the purchaser should be allowed in part payment of the purchase-money, and he was to be secured against liabilities for or on account of his indorsements. The consideration he agreed to pay was adequate, or at all events not so far under a liberal valuation as to raise any presumption of fraud on that account, and he was of sufficient means and responsibility to make the purchase and the terms of credit appear to have been fixed so as to secure the payment of the notes he gave for the purchase-money when they fell due.

The amount of the notes was not sufficient to pay all the

debts of the firm, and it was the object of Many, the member thereof who made the sale, to prefer certain of their creditors, including a copartnership (of Many, Baldwin & Many), in the payment of debts due to them, and to indemnify them against liability on indorsements made for their accommodation. This object, although known to Phillips at the time of his purchase, did not render it fraudulent as against the plaintiff or any of the creditors who were not to be so preferred. A debtor, notwithstanding his insolvency, is allowed to make such preference, if *bona fide*, and a sale for that purpose is not invalid.

It appears that one of the debts which Many wished to secure was a note made or indorsed in the firm name of Many & Lewis for the private debt of Many himself, and indorsed by the said copartnership of Many, Baldwin & Many; but I infer, from what is stated relative thereto, that it was valid and obligatory on the firm, and properly chargeable against it. But if it was otherwise the fact cannot affect Phillips, the purchaser. It is not found by the referee, nor is it claimed that he had any knowledge or notice, at the time of his purchase, of the origin or consideration of that note, or the purpose for which it was given.

I will only add, that on a careful examination of the facts found by the referee (and they are presented by his findings as favorably to the plaintiffs as the testimony warranted), I am brought to the conclusion that there was no sufficient ground for the reversal by the General Term of the judgment entered on his report, either on the ground of error upon the questions of fact or of law involved in the case.

It follows that the order of reversal should be reversed, and that the original judgment must be affirmed with costs of the appeals to the General Term and to this court.

All concur.

Judgment accordingly.