WILLIAM H. GOODWIN, Respondent, *v.* JOHN C. SCHREIBER,
Appellant.

*Numerous sales on credit are not alone proof of fraud — judgment that does not con-*
*form to the verdict — how corrected.*

The mere fact that a large number of the sales from a firm were on credit,
although the vendee might have known that the firm was in failing circum-
stances, does not establish fraud.

If a judgment as entered in an action does not, in fact, conform to the verdict
rendered therein, the proper remedy is by motion to correct and not by appeal.

APPEAL by the defendant, John C. Schreiber, from a judgment
of the Supreme Court in favor of the plaintiff, entered in the office
of the clerk of the county of Oneida on the 30th day of October,
1893, upon the verdict of a jury rendered after a trial at the
Oneida Circuit, and also from an order entered in said clerk's office
on the 1st day of November, 1893, denying the defendant's motion
for a new trial made upon the minutes. ·

*Jones & Townsend,* for the appellant.

*Matteson & DeAngelis* and *William Kernan,* for the respondent.

MERWIN, J. :

On the 16th day of September, 1892, the defendant, as sheriff of
the county of Oneida, under an attachment against the property of
Enos Boutilier and Alexander M. Hubley, composing the firm of
Boutilier & Co , levied upon 410 bales of rags, then being in the
possession of the plaintiff. On the 20th of September, 1892, a
similar levy was made by defendant under another attachment, and
on the 2d of February, 1893, the property was sold by the defend-
ant under executions issued on judgments recovered in the actions
in which the attachments were issued. The plaintiff was a dealer
in rags, and the property levied on consisted of his entire stock in
his storehouse. The sheriff took possession of the storehouse and
so remained about a month, when he removed the goods. This
action is brought to recover damages for the conversion of the goods
taken by the defendant and for damages to the premises and busi-
ness of the plaintiff. The verdict is for the value of the goods.

The claim of the defendant is that all the goods taken were sold by Boutilier & Co. to the plaintiff under such circumstances as indicated an intention on the part of Boutilier & Co. to hinder, delay and defraud their creditors, and that the plaintiff participated in the fraud. The plaintiff claims that a considerable portion of the goods were purchased by him of other parties, and that what he purchased of Boutilier & Co. were purchased in good faith for a valuable consideration and without any notice of any fraudulent intent on the part of Boutilier & Co.

Boutilier & Co. had for several years been engaged in the business of buying, selling, sorting and grading rags to the extent of about $300,000 a year, though they apparently did not have capital of any very large amount. In the spring of 1892 they met with some large losses, but they continued in business, making large purchases and sales and using the proceeds in their business, until about the 6th of September, 1892, when the crisis came, the immediate cause being the refusal of further discounts at the banks at which they did business. The event showed that they were largely insolvent, and evidence was given on the part of the defendant tending to show that many purchases were made by them when they knew that they were insolvent and would not be able to pay the price when it became due. These purchases, however, so far as the property in controversy is concerned, are not repudiated by the sellers, as the property here is sought to be reached by the defendant as the property of Boutilier & Co. The issue here is over the character and purpose of the sales from Boutilier & Co. to plaintiff.

The plaintiff commenced the business of buying, sorting and selling rags the latter part of May, 1892. He had then in money, according to his testimony, the sum of $700, and he soon afterwards borrowed of his father and used in the business the sum of $2,450. From the time of starting up to the sixth of September following at various times he purchased goods of Boutilier & Co. to the amount of about $23,700, paying therefor in cash and merchandise, as the evidence tends to show, about the sum of $7,000, and the balance by notes, the most of which were on four months' time, though there were some at two and three months. He purchased goods of other parties to the extent, as he testifies, of $11,000 or $12,000. The notes given to Boutilier & Co. were used in their business, and

those that became due prior to the seizure by the defendant of the property seem to have been paid. After September 16 and prior to January 1, 1893, notes to the amount of about $2,900 seem to have been paid, and the balance of the indebtedness for goods is in amount about equal to the value of the property in controversy. The plaintiff, after obtaining possession of his storehouse, continued to carry on the business, and was so engaged at the time of the trial in October, 1893.

At the trial the court charged the jury that the questions for them to consider were, *first*, did the firm of Boutilier & Co. transfer their property to the plaintiff with the intention of defrauding their creditors, and, *secondly*, did the plaintiff accept the transfer either knowing of that intent or having reasonable cause to believe that the intent existed, and that if either of these questions was found in the negative the plaintiff was entitled to their verdict. The defendant does not complain of this presentment of the questions, but does claim that the verdict for the plaintiff is against the evidence.

The question of fraud was one to be determined from a large number of circumstances, the bearing and effect of which might seem to be different to different minds. The fact standing alone that a large number of the sales to plaintiff were on credit, although plaintiff may have known that Boutilier & Co. were in failing circumstances, did not establish fraud. (*Loeschigk* v. *Bridge*, 42 N. Y. 421; *Ruhl* v. *Phillips*, 48 id. 128.) The jury had a right to believe from the evidence that the plaintiff, had he been let alone, would have paid for all that he bought and that the price he agreed to pay for the goods was as much as at the time they were reasonably worth, and that all the proceeds were being used by Boutilier & Co. for the payment of their debts, without any reservation for their own individual benefit. The absence of any such reservation or expectancy would be a material element on the question of fraud as well as of notice to plaintiff. The evidence to say the least does not make it clear that the plaintiff had any design to furnish Boutilier & Co. any secret benefit, or assist them in getting rid of their debts. The plaintiff at the trial presented an explanation to many of the circumstances upon which defendant relied as being suspicious or as pointing towards fraud. The weight or force to be given to these explanations was peculiarly within the province of

the jury to determine, as they saw the plaintiff and heard him tes-
tify as well as the witness Baxter who was said to have been the
chief assistant of the plaintiff in the transactions.

We have carefully examined the evidence and we are of the
opinion that there is no such preponderance in favor of the defend-
ant as would justify us in disturbing the verdict. (4 R. S. [8th ed.]
2593, § 4; *Bulger* v. *Rosa*, 119 N. Y. 459.)

The defendant claims that the court erred in allowing the plain-
tiff to testify as to the reason why his brother-in-law, Baxter, helped
him to keep his books. This, however, was proper by way of expla-
nation in regard to what had appeared on the cross-examination of
the plaintiff by the counsel for the defendant.

A witness for the defendant, after having testified that he assisted
in the weighing and appraisal of the stock in plaintiff's warehouse
in October, 1892; that the stock was piled in the rooms and not
classified according to grades; that there was no order observed as
to the classifying of them at all; that he was accustomed to the
manner of keeping goods of that character in storehouses and knew
how it is done in the trade, was asked the question: "What is the
custom in the trade in that respect?" This was objected to by the
plaintiff as incompetent and was excluded and an exception taken.
This is claimed to be error. It hardly needed evidence to show that
the orderly conduct of the business required proper classification.
The facts on the subject fully appeared and it is not clear how any
custom in the trade would make the matter better or worse. Besides
it had been previously shown by the defendant without objection
that it was customary for rag dealers to have the different grades of
rags placed together by themselves in the storehouse, and it was
subsequently shown by defendant without objection by another wit-
ness, who was a rag dealer, that "we try to keep the grade together
as much as we can when we pile up the bales." There was no dis-
pute on the subject. We fail to see in this ruling any good ground
for a reversal. Our attention is not called to any other ruling.
There was no exception to the charge and there was no motion for
a nonsuit.

It is suggested that the verdict was for the sum of $11,448.76,
and that the judgment was entered on the basis that the verdict was
for the sum of $11,948.76. A correction of the judgment is asked

for. The verdict as it appears in the appeal book in the clerk's minutes of the trial is the sum of $11,448.76. In the order denying the motion on the minutes for a new trial it is recited that the verdict was for the sum of $11,948.76 and it is so recited in the judgment. It is also so stated in the statement in the printed case under rule 41. At the sheriff's sale on February 2, 1893, the property sold for $11,449, and under the charge the jury were allowed to take that as the measure of damages with interest from February 2, 1893, to the time of the rendition of the verdict on October 24, 1893. This would make the verdict substantially as entered in the judgment. If the judgment as entered does not in fact conform to the verdict, the proper remedy is by motion to correct and not by appeal. (*Leonard* v. *Columbia Steam Nav. Co.*, 84 N. Y. 48, 56, and cases cited.)

. HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order affirmed, with costs.